John M. Macfarlane (Idaho State Bar # 10164)
john@yhmlaw.com
*P. McKay Corbett (Utah State Bar # 16800)
mckay@yhmlaw.com
*Andres F. Morelli (Utah State Bar # 16907)
andy@yhmlaw.com
YOUNKER HYDE MACFARLANE, PLLC
*Attorneys for Plaintiff*
257 East 200 South, Suite 1080
Salt Lake City, UT  84111
Telephone: (801) 335-6467
Facsimile: (801) 335-6478

*Pro Hac Vice Pending

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| DONNA CAPORASO,<br><br>       Plaintiffs,<br><br>vs.<br><br>UNITED STATES; FAMILY MEDICINE HEALTH CENTER; FAMILY MEDICINE RESIDENCY OF IDAHO, INC.; FAMILY RESIDENCY OF IDAHO; FAMILY MEDICINE HEALTH CENTER-RAYMOND CLINIC; MICHAEL CLAUSSEN, M.D.; CHRISTOPHER LINK, M.D.; JOSEPH PENDLETON, M.D.; NATHANIEL ORD, M.D.; HEATHER E. QUINN, M.D.; DOE INDIVIDUALS 1 through 10; and ROE ENTITIES 1 through 10, inclusive.<br><br>       Defendants. | **AMENDED COMPLAINT**<br><br>Case No. 1:22-CV-00006<br><br>Judge David C. Nye |

Donna Caporaso, by and through her attorney, John M. Macfarlane, and the law offices of Younker Hyde Macfarlane, allege and complain as follows:

## IDENTIFICATION OF PARTIES

1. Plaintiff Donna Caporaso is a resident of Ada County, State of Idaho.

2. Defendant, Family Medicine Health Center, acting by and through its agents and employees, at all times mentioned herein, is an Idaho corporation with its principal place of business in Ada County, State of Idaho.

3. Defendant, Family Medicine Residency of Idaho, Inc., acting by and through its agents and employees, at all times mentioned herein, is an Idaho corporation with its principal place of business in Ada County, State of Idaho. It is also believed to employ the individual Defendants and is covered by the FTCA.

4. Under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), the United States Government is responsible for all acts and omissions of Family Medicine Residency of Idaho, Inc. and its agents and employees.

5. Defendant, Family Residency of Idaho, acting by and through its agents and employees, at all times mentioned herein, is an Idaho corporation with its principal place of business in Ada County, State of Idaho

6. Defendant, Family Medicine Health Center – Raymond Clinic, acting by and through its agents and employees, at all times mentioned herein, is an Idaho corporation with its principal place of business is Ada County, State of Idaho.

7. Defendant Michael Claussen, M.D., is a physician licensed under the laws of the State of Idaho and engaged in the practice of medicine in Ada County, State of Idaho.

8. Defendant Christopher Link, M.D., is a physician licensed under the laws of the State of Idaho and engaged in the practice of medicine in Ada County, State of Idaho.

9. Defendant Joseph Pendleton, M.D., is a physician licensed under the laws of the State of Idaho and engaged in the practice of medicine in Ada County, State of Idaho.

10. Defendant Nathaniel Ord, M.D., is a physician licensed under the laws of the State of Idaho and engaged in the practice of medicine in Ada County, State of Idaho.

11. Defendant Heather E. Quinn, M.D., is a physician licensed un the laws of the State of Idaho and engaged in the practice of medicine in Ada County, State of Idaho.

12. Defendant Doe Individuals 1 through 10 and Roe Entities 1 through 10 are set forth herein as all unknown persons or business entities currently unknown to Plaintiff who have a claim to any interest in the subject matter of this action, whose true name(s) is (are) unknown to Plaintiff, and who are believed to be responsible for the events and happenings referred to in this Complaint, causing injuries and damages to Plaintiff, or who are otherwise interested in the subject matter of this Complaint. At such time when the names of said Doe Individuals and Roe Entities have been ascertained, Plaintiff will request leave from the court to insert their true names and capacities and adjoin them in this action so that the Complaint will be amended to include the appropriate names of said Doe Individuals and Roe Entities.

## JURISDICTION AND VENUE

13. All of the events alleged in this complaint took place in the State of Idaho.

14. All conditions precedent to the right to bring and maintain this action, including exhaustion of available administrative remedies, have been performed or have occurred as required by 42 U.S.C. § 1997e(a) and Idaho Code Ann. §78B-3-401, et seq.

15. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1343(3) and 1331, as well as 28 U.S.C. § 1346(b)(1) and the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et

seq., (hereinafter "FTCA") which provides that a tort claim which has been administratively denied may be submitted to a federal district court for judicial consideration.

16. Jurisdiction and Venue are proper pursuant to 28 U.S.C. § 1391(b)(2), 1331 and 1346(b) as a claim against the United States pursuant to the FTCA, in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

17. On August 9, 2019, Donna Caporaso ("Ms. Caporaso"), (DOB 11/17/1987) presented to Family Medicine Health Center – Raymond Clinic ("FMHC") and Dr. Jeffrey Pennings, DO, ("Dr. Pennings") complaining of new onset pain in the upper back with some mild associated neck pain.

18. A physical exam showed her to be tender to palpation along the T2-T6 paraspinal muscles on the left side. Dr. Pennings suspected the underlying etiology to be musculoskeletal.

19. An OMT (Osteopathic Manipulative Treatment) was performed.

20. Ms. Caporaso was encouraged to try heat and stretch in the morning as well as use Ibuprofen as needed.

21. Ms. Caporaso returned to FMHC on November 13, 2019 with continued back pain. She noted it to be throbbing, sharp and constant, no improvement with medication or treatment. She noted no trauma or injury.

22. Dr. Daniel Mueller, MD ("Dr. Mueller"), evaluated her and ordered a Thoracic Spine Xray.

23. The xray was negative for acute fracture, with mild diffuse degenerative disc disease noted as the conclusion.

4

24. Dr. Mueller noted the pain had been going on for months and prescribed gabapentin.

25. Unfortunately, Ms. Caporaso's pain continued.

26. Ms. Caporaso initiated a telehealth visit on November 7, 2020 with complaints of back pain. She noted that it had increased two weeks previous.

27. Ms. Caporaso told Dr. Michael Claussen, MD ("Dr. Claussen"), that the pain was severe and preventing her from sleeping well.

28. Ms. Caparaso also told Dr. Claussen that she was experiencing weakness and tingling in her legs and both hands, as well as feeling more weak over the past two weeks.

29. Ms. Caporaso denied saddle anesthesia or numbness at this time.

30. Along with the weakness complaint, Ms. Caporaso reported some urinary incontinence which was new to her, and which had started 4-5 days previously.

31. At this point the visit was converted to an in-person visit.

32. Dr. Claussen performed a physical exam which showed tenderness to palpation of the thoracic and lumbar paraspinal muscles, focally tender in the right paraspinal muscles C6-C7.

33. A strength exam of the elbow, hip, knee, dorsiflexion and plantar flexion were noted to be 5/5 and symmetric despite Ms. Caporaso's complaint of new onset weakness.

34. Ms. Caporaso was instructed to return to the clinic in 2 weeks for follow up and to return for rapidly worsening weakness, numbness, saddle anesthesia and incontinence.

35. Ms. Caporaso was told to continue her medications.

36. This visit note and plan was reviewed and approved by Dr. Heather Quinn ("Dr. Quinn").

37. On July 6, 2020, Ms. Caporaso returned to FMHC and saw Dr. Nathaniel Ord, MD ("Dr. Ord").

38. Dr. Ord noted that since March of this year, Ms. Caporaso had described developing weakness and sensory changes in her lower legs that came and went.

39. Ms. Caporaso also reported that she was now having saddle anesthesia but not all the time. She reported intermittent hot/cold feet and sensory changes to her anterior thigh, and her legs being weak.

40. Ms. Caporaso reported that she saw a rheumatologist who was concerned that her symptoms could be cauda equina related.

41. Ms. Caporaso also reported occasional bladder incontinence, but no bowel incontinence.

42. Dr. Ord noted Ms. Caporaso's complaints of back pain associated with peripheral numbness and weakness of both legs.

43. Dr. Ord noted that Ms. Caporaso also had altered sensation in the perineum, anterior thighs and in legs.

44. Ms. Caporaso noted occasional bladder incontinence and was there specifically asking for imaging and a referral to neurology.

45. Weakness was demonstrated on exam with 4+ of 4- in some categories.

46. Dr. Ord mentioned that he did not think the situation was emergent and plans were made for a nerve conduction study and an MRI.

47. Dr. Ord's decision-making and plan was reviewed and approved by Dr. Christopher Link ("Dr. Link").

48. An MRI of the Lumbar spine only was completed on August 10, 2020 at St. Luke's Hospital.

49. This study only showed T11-S1 and was interpreted as relatively normal with some mild disc bulges, nothing to explain her symptoms.

50. Dr. Ord saw Ms. Caporaso in follow up on August 19, 2020 with Justin Bailey MD, resident.

51. Ms. Caporaso's visit diagnosis included back pain associated with peripheral numbness and thoracic back pain.

52. Ms. Caporaso at this time noted that the pain and weakness were getting worse and making it difficult to work. She also worried about right foot weakness and felt like she had a foot drop.

53. It was noted that she had to lift her right leg in and out of the car.

54. Trigger point injections were given.

55. Dr. Ord noted that he did not suspect that her symptoms were entirely the result of muscle tension/tightness, and he would continue with the neurologic referral.

56. On September 2, 2020 Ms. Caporaso saw Dr. Joseph Pendleton, MD ("Dr. Pendleton"), for complaints of shoulder pain, weakness of leg and back pain.

57. Dr. Pendleton noted that her weakness was atypical for somatic dysfunction. He "considered potential neurological cause".

58. Ms. Caporaso saw Dr. Ord in follow up on September 29, 2020.

59. Dr. Quinn was also present at this exam.

60. Dr. Quinn noted that Ms. Caporaso had chronic progressive back pain with thigh weakness and sensory changes in bilateral lower extremities.

61. Dr. Ord referred Ms. Caporaso to Dr. Gurjeet Singh, a neurologist in Vancouver as it was noted Ms. Caporaso was moving to that city.

62. Ms. Caporaso continued with back pain and weakness until she was admitted to the University of Oregon Health Sciences University Hospital.

63. Dr. Anh Huan Vo, neurologist, immediately ordered an MRI of the Thoracic spine which showed a mass present at T2-T3 and measuring 2.4 by 1.2 by 1.2 cm with resultant severe spinal canal narrowing and spinal cord compression.

64. Dr. Jesse Liu ("Dr. Liu"), performed T2-T4 laminoplasties for resection of an intradural extramedullary mass on December 11, 2020.

65. Dr. Liu noted that it was indenting the cord and appeared to have dural attachment.

66. Ms. Caporaso is now confined to a wheelchair and is requiring significant rehabilitation services.

## CAUSE OF ACTION

**(Medical Malpractice)**

67. Plaintiff incorporates by this reference the allegations of the foregoing paragraphs as though fully set forth herein.

68. As of this time, Plaintiff complains and alleges that Defendants owed Plaintiff a duty to provide the same medical care a reasonable and prudent healthcare provider would under

similar circumstances. Defendants have breached their duty in that the care and treatment provided to Plaintiff by Defendants was wrongful, careless, and negligent, including but not limited to the following particulars:

    A.    Failure to timely order appropriate radiologic imaging;

    B.    Failure to properly interpret radiographic images;

    C.    Failure to timely refer Ms. Caporaso to an appropriate specialist;

    D.    Failure to timely appreciate neurologic weakness;

    E.    *Res ipsa*; and

    F.    Failure of informed consent.

69. As a direct and proximate result of the foregoing wrongful, careless and negligent acts and/or omissions of Respondents, Plaintiff has sustained significant economic and non-economic damages including, but not limited to past, present and future medical, medical and attendant care expenses, lost wage and lost wage-earning capacity, physical, mental and emotional pain and suffering and out of pocket costs.

## SECOND CAUSE OF ACTION

### (Vicarious Liability)

70. All the preceding paragraphs are incorporated herein.

71. All individuals identified or referred to in the care described above are believed to be employees or agents of the defendant entities named in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to

be proven at trial together with pre and post judgment interest and costs as follows:

    1.    Judgment in favor of Plaintiff and against Defendants for general damages in an amount to be proved at trial;

    2.    Judgment in favor of Plaintiff and against Defendants for special damages in an amount to include interest and to be proved at trial; and

    3.    Plaintiff's costs incurred herein together with such other and further relief as the Court may deem appropriate under the circumstances.

DATED this 21st day of March 2022.

          */s/ John M. Macfarlane*
          John M. Macfarlane
          P. McKay Corbett
          Andres F. Morelli
          YOUNKER HYDE MACFARLANE
          *Attorneys for Plaintiff*